IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN CHACE,<br><br>          Plaintiff,<br><br>     v.<br><br>MAGELLAN AMMONIA PIPELINE, L.P.;<br>MAGELLAN MIDSTREAM PARTNERS,<br>L.P.; and MAGELLAN DOE COMPANY;<br><br>          Defendants. | CASE NO.:  8:18CV113<br><br><br>BRIEF IN SUPPORT OF MAGELLAN<br>AMMONIA PIPELINE, L.P. AND<br>MAGELLAN MIDSTREAM PARTNERS,<br>L.P.'s MOTION TO DISMISS |

COME NOW Defendants, Magellan Ammonia Pipeline, L.P. ("Magellan Pipeline") and Magellan Midstream Partners, L.P. ("Magellan Midstream") (collectively "Magellan"), and submit the following brief in support of Magellan's Motion to Dismiss ([Filing 12](#)).

## INTRODUCTION

Plaintiff Steven Chace ("Plaintiff") has sued Magellan for alleged personal injuries and property damage he claims to have sustained following an October 17, 2016, release of anhydrous ammonia from Magellan's pipeline. Plaintiff asserts five state law claims and one federal claim against Magellan: strict liability, negligence, inverse condemnation, nuisance, trespass, and a violation of the Resource Conservation & Recovery Act, 42 U.S.C. §6901 et seq. ("RCRA"). Plaintiff asserts this Court has both diversity and federal question jurisdiction to hear his claims; however, Plaintiff has failed to carry his burden to establish jurisdiction by competent proof and by a preponderance of the evidence.

This Court lacks diversity jurisdiction because Plaintiff has presented no proof that Magellan is diverse in citizenship from Plaintiff. Magellan Midstream is a publicly traded Master Limited Partnership. A partnership is considered to have the citizenship of all of its constituent partners. Magellan has limited partners, also known as unitholders, who are citizens of Nebraska. As a result, given that Plaintiff alleges he is a resident of Nebraska, Magellan's unitholders' Nebraska citizenship prevents this Court from exercising diversity jurisdiction. At the very least, Plaintiff has failed to prove that

no Magellan Midstream unitholders are Nebraska citizens and residents, which dooms his claim of diversity of citizenship.

This Court also lacks federal question jurisdiction because Plaintiff has failed to state a claim under RCRA. Congress promulgated RCRA to establish a regulatory program to manage the treatment, transport, and storage of solid and hazardous *waste* from its generation to final disposal. Plaintiff has failed to state a claim under RCRA because anhydrous ammonia is not solid or hazardous waste. Additionally, Plaintiff has not followed the appropriate administrative procedure which is a requisite to asserting a RCRA claim. Finally, even assuming anhydrous ammonia constitutes waste (which it does not), Plaintiff has not properly alleged it presents imminent and substantial endangerment to health or the environment. After dismissal of Plaintiff's sole federal claim, this Court does not have original jurisdiction to hear Plaintiff's claims. Plaintiff's remaining claims all arise under Nebraska law, and therefore do not provide a basis for this Court to exercise original jurisdiction.

In the event the Court determines it has jurisdiction, Magellan also seeks dismissal of Plaintiff's strict liability and trespass claims for failure to state a claim. Plaintiff has failed to state a claim for strict liability because the transportation of anhydrous ammonia is not an ultrahazardous and abnormally dangerous activity. Plaintiff has failed to state a trespass claim because Plaintiff has not alleged Magellan intentionally caused the release of anhydrous ammonia, a necessary element of a trespass claim.

## FACTUAL BACKGROUND

### A. Plaintiff's Complaint

The following facts are recited only for the purpose of providing a summary of the factual background underlying Plaintiff's Complaint. By summarizing the factual allegations in Plaintiff's Complaint, Magellan is not admitting any facts.

Magellan operates an anhydrous ammonia pipeline that travels through Nebraska, and specifically, by easement, through Plaintiff's property. See Filing 1, Complaint ¶¶ 6, 8, 18.[1] On the evening of October 17, 2016, a release of anhydrous ammonia occurred at a section of the pipeline near Plaintiff's property. Id. ¶¶ 1, 9, 20.

---

[1] Magellan refers to the paragraph numbered 18 on page three of Plaintiff's Complaint.

Plaintiff alleges he was at his residence when he awoke choking on anhydrous ammonia. Id. ¶ 21. Plaintiff looked out his window, saw a cloud that he recognized as anhydrous ammonia, called Magellan's emergency numbers and 911, and left his residence. Id. ¶ 22. Plaintiff alleges he was exposed to significant levels of anhydrous ammonia and that as a result of his exposure, he sustained various personal injuries. Id. ¶¶ 23, 25-26. Plaintiff also alleges his property suffered damage. Id. ¶¶ 23, 27.

Plaintiff asserts six claims against Magellan: (i) strict liability (¶¶ 30-33), (ii) negligence (¶¶ 34-36), (iii) inverse condemnation (¶¶ 37-38), (iv) nuisance (¶¶ 39-41), (v) trespass (¶¶ 42-47), and (vi) violation of RCRA (¶¶ 48-53). For purposes of this Motion, Magellan focuses on Plaintiff's strict liability, trespass, and RCRA claims. Under Plaintiff's strict liability claim, Plaintiff alleges the transportation of anhydrous ammonia is an ultrahazardous and abnormally dangerous activity. Id. ¶ 31. Under Plaintiff's trespass claim, Plaintiff alleges Magellan, acting "willfully and wantonly . . . caused or permitted its anhydrous ammonia to be Released from its pipeline and to flow over, onto, into, and across, Mr. Chace's real estate without his consent." Id. ¶¶ 44-45. In support of his RCRA claim, Plaintiff alleges anhydrous ammonia is a "solid waste and hazardous waste under the RCRA, because Magellan disposed of the petroleum and associated constituent matter by releasing the chemicals into the environment[.]" Id. ¶ 51. Plaintiff alleges Magellan's alleged "RCRA violations pose an imminent and substantial threat to health and the environment because of the ongoing nature and severity of the pollution." Id. ¶ 52.

### B. Magellan Pipeline and Magellan Midstream

Magellan Midstream is a publicly traded Master Limited Partnership. See Filing 13, Index of Evidence, Ex. 1, Declaration of Suzanne Costin ("Costin Decl."), ¶ 4. Magellan Pipeline is a wholly owned, indirect subsidiary of Magellan Midstream. Id. Magellan Midstream, as a publicly traded Master Limited Partnership, had approximately 185,000 unitholders who own limited partner interests in the partnership as of December 31, 2017. Id. ¶ 5. As required by the Internal Revenue Service, Magellan Midstream annually causes Schedule K-1 forms to be sent to its unitholders to the addresses provided by those unitholders. Id. ¶ 6. Some addresses are the unitholders' residence addresses, some are business addresses, and some are the

3

addresses of accountants, brokers or other designated representatives of the unitholders. Id. According to Magellan Midstream's records reflecting the addresses to which Schedule K-1 forms were sent to Magellan Midstream unitholders for the year 2017, there are more than 1,300 unitholders with addresses in Nebraska. Id. ¶ 7.

## STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). The district court must "consider whether it has subject matter jurisdiction in every case." Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011). "[I]f the jurisdictional allegations are challenged by the defendant, the plaintiff has the burden of establishing jurisdiction by competent proof and by a preponderance of the evidence." Eckerberg v. Inter-State Studio & Publ'g Co., 860 F.3d 1079, 1084 (8th Cir. 2017). The district court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). There is no "presumptive truthfulness attache[d] to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. (quoting Mortensen, 549 F.2d at 891).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

> In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards.

Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citations omitted). If the defendant makes a factual attack on the jurisdictional allegations of the complaint, the court may receive competent evidence such as

4

affidavits in order to determine the factual dispute.  See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) (footnote and citations omitted).

### B. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Krause v. City of Omaha, No. 8:15CV197, 2015 U.S. Dist. LEXIS 110216, at *3 (D. Neb. Aug. 19, 2015) (Smith Camp, J.)  (quoting Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012)).  "To avoid dismissal, a complaint must provide allegations sufficient to state a claim as a matter of law and not merely provide legal conclusions."  Dillon v. Gottsch Emplrs. Grp., LLC, No. 8:05CV467, 2006 U.S. Dist. LEXIS 1935, at *3-4 (D. Neb. Jan. 6, 2006) (Smith-Camp, J.)  "In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations." Potocnik v. Carlson, 9 F. Supp. 3d 981, 987 (D. Minn. 2014) (citing Twombly); see also Monson v. DEA, 589 F.3d 952, 962 (8th Cir. 2009) (holding that in ruling on a motion to dismiss, courts are free to disregard "unsupported conclusions, unwarranted inferences and sweeping legal conclusions" cast in the form of factual allegations).

## ARGUMENT
### A. Lack of Subject Matter Jurisdiction
#### 1. Lack of Diversity Jurisdiction

Plaintiff has failed to satisfy his burden to establish the existence of complete diversity of citizenship between Plaintiff and Magellan.  The Constitution extends the judicial power of the federal courts to controversies "between Citizens of different States, U.S. Const. art. III, § 2, and Congress enacted legislation to give federal courts original jurisdiction of all civil actions 'between . . . citizens of different States," and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]"  Eckerberg, 860 F.3d at 1084 (internal quotation marks and citations omitted); 28 U.S.C. § 1332(a)(1).  Complete diversity of citizenship exists

5

where "no defendant holds citizenship in the same state where any plaintiff holds citizenship." Id. "Subject-matter jurisdiction based on diversity of citizenship must be measured by the facts that existed at the time of filing." Id. (citation omitted). The plaintiff "has the burden of establishing jurisdiction by competent proof and by a preponderance of the evidence." Id.

In the Complaint, Plaintiff merely alleges he is a resident of Nebraska and that Magellan's principal place of business is in Tulsa, Oklahoma. See Filing 1, Complaint ¶¶ 4, 6-7. Plaintiff's Complaint is devoid of any allegations establishing his own citizenship or Magellan's citizenship. Plaintiff's allegation of his residence is insufficient to establish his citizenship for purposes of determining diversity jurisdiction. See Yeldell v. Tutt, 913 F.2d 533, 537 (8th Cir. 1990) (recognizing citizenship is determined by an individual's domicile); Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (recognizing district court properly held it lacked diversity jurisdiction where complaint alleged only residency of plaintiffs); see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1238 (10th Cir. 2015) (stating that "[a]n individual's residence is not equivalent to his domicile and it is domicile that is relevant for determining citizenship"). Furthermore, though Plaintiff recognizes Magellan Midstream and Magellan Pipeline are limited partnerships, Plaintiff fails to allege the citizenship of Magellan's members. See OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007) (stating non-corporate entities have the citizenship of each of its members); GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 828-29 (8th Cir. 2004) (recognizing diversity jurisdiction in a suit by or against an unincorporated entity depends on the citizenship of all the members and the corporation exception does not apply to other entities). Due to Plaintiff's failure to establish the citizenship of the respective parties, thus failing to satisfy his burden, the Court should dismiss Plaintiff's Complaint for lack of diversity jurisdiction.

Regardless of Plaintiff's allegations, assuming Plaintiff is a citizen of Nebraska, which has not been alleged, Plaintiff is unable to meet his burden of showing complete diversity because Magellan Midstream, which is a publicly traded Master Limited Partnership, has 1,300 unitholders in Nebraska, and as the citizenship of a partnership's constituent members dictates the citizenship of a partnership, Magellan is a citizen of

6

Nebraska. The Supreme Court has recognized an unincorporated entity's citizenship is determined by its members' citizenship. Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990) (citing Chapman v. Barney, 129 U.S. 677, 9 S. Ct. 426, 32 L. Ed. 800 (1889)). In Carden, the Supreme Court held that the citizenship of limited partners in a limited partnership had to be taken into account in evaluating diversity jurisdiction. Carden, 494 U.S. at 195-96. "Carden was the result of case authority spanning a century of Supreme Court decisions uniformly applying the Chapman rule and holding that various forms of unincorporated associations are citizens of their members' states of citizenship." Grynberg v. Kinder Morgan Energy, Ltd. P'ship, 805 F.3d 901, 906 (10th Cir. 2015), cert. denied, 136 S. Ct. 1714 (2016) (citations omitted). As a result of Carden and Supreme Court precedent, the Eighth Circuit has stated "[c]orporations and unincorporated associations, including partnerships, are treated differently for purposes of diversity jurisdiction." Alumax Mill Prods., Inc. v. Cong. Fin. Corp., 912 F.2d 996, 1003 (8th Cir. 1990) (citing 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3630 (2d ed. 1984)). "Unlike corporations, the actual citizenship of each member of a partnership must be considered in determining whether diversity jurisdiction exists." Id. (citations omitted); see also Carden, 494 U.S. at 195-96; GMAC Commer. Credit, 357 F.3d at 828; Ray Brown & Assocs. v. Hot Springs Senior Props., Ltd. Liab. Co., No. 8:07CV159, 2008 U.S. Dist. LEXIS 68967, at *11 (D. Neb. May 29, 2008) (recognizing application of Carden).

"MLPs are similar to limited partnerships in that they have general partners who manage the partnership's affairs and limited partners (called 'unitholders') who provide capital." Grynberg, 805 F.3d at 904. "The Chapman rule [referenced in Carden] applies to MLPs because they are unincorporated associations (1) formed under state law as limited partnerships or limited liability companies and (2) classified as partnerships for federal income tax purposes." Grynberg, 805 F.3d at 906; see also Pathfinder Transp., LLC v. Pinnacle Propane, LLC, 259 F. Supp. 3d 949, 950-53 (W.D. Ark. 2017) (following the "apparently unanimous approach" that the citizenship of Master Limited Partnerships must be determined by reference to the citizenships of their members).

Magellan Midstream's status as a Master Limited Partnership requires the consideration of the citizenship of its unitholders. As of December 31, 2017, Magellan

7

Midstream had approximately 185,000 unitholders who own limited partner interests in the partnership. See Filing 13-1, Ex. 1, Costin Decl., ¶ 5. Out of the approximate 185,000 unitholders, approximately 1,300 unitholders, according to Magellan Midstream's records used to send IRS-required Schedule K-1 forms, have Nebraska addresses. Id. ¶¶ 6-7. The Nebraska citizenship of even one of Magellan Midstream's unitholders destroys complete diversity. Accordingly, the Court lacks diversity jurisdiction and should dismiss Plaintiff's Complaint.

### 2. Lack of Federal Question Jurisdiction

This Court further lacks federal question jurisdiction because Plaintiff fails to state a claim for relief under RCRA, Plaintiff's lone claim that arises under federal law. "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction[.]" Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A., 551 F.3d 812, 816 (8th Cir. 2009). Under 28 U.S.C. § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he question whether a claim arises under federal law must be determined by reference to the well-pleaded complaint." Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC, 843 F.3d 325, 329 (8th Cir. 2016) (citation omitted). "The well-pleaded complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. (citation omitted).

In an effort to obtain jurisdiction in federal court, Plaintiff attempts to assert a claim under RCRA. See Filing 1, Complaint ¶¶ 48-53. As discussed below in Section B.1 of this Brief, Plaintiff has failed to state a RCRA claim against Magellan. Therefore, this Court does not have subject matter jurisdiction under 28 U.S.C. § 1331. None of Plaintiff's remaining claims arise under the Constitution or federal laws or treatises. In fact, each of Plaintiff's remaining claims (strict liability, negligence, inverse condemnation, nuisance, and trespass), arise under Nebraska law, and therefore do not provide a basis for this Court to exercise original jurisdiction.

### B. Failure to State a Claim

#### 1. Plaintiff Has Failed to State a Claim Under RCRA

Plaintiff alleges that Magellan's ammonia release was in violation of RCRA and that he may pursue a civil remedy for that alleged violation under 42 U.S.C. § 6972(a)(1)(B). However, Plaintiff's claim under RCRA fails for three reasons. First, Plaintiff failed to provide proper notice to the required entities under RCRA before initiating a § 6972(a)(1)(B) claim. Second, anhydrous ammonia is not a "solid or hazardous waste" for purposes of RCRA. Third, even assuming anhydrous ammonia could be considered a solid or hazardous waste, Plaintiff has not sufficiently alleged it presents an imminent and substantial endangerment to health or the environment.

### a. Plaintiff has failed to follow RCRA's notice requirements

In order to assert a claim under § 6972(a)(1)(B), certain administrative procedures must be followed. Specifically, under § 6972(b)(2),

> No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to--
> (i) the Administrator [of the Environmental Protection Agency];
> (ii) the State in which the alleged endangerment may occur;
> (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B),
> except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subtitle C of this Act [42 USCS §§ 6921 et seq.].

42 U.S.C. § 6972(b)(2)(A)(i) - (iii). Further, "[w]henever any action is brought under subsection (a)(1)(B) in a court of the United States, the plaintiff shall serve a copy of the complaint on the Attorney General of the United States and with the Administrator." 42 U.S.C. § 6972(b)(2)(F).

Plaintiff's RCRA claim should be dismissed because Plaintiff has not complied with the notice provisions under RCRA. Compliance with RCRA's notice provision is "a mandatory, not optional, condition precedent for suit." Hallstrom v. Tillamook Cty., 493 U.S. 20, 26 (1989). Plaintiff's Complaint is devoid of any allegation that he provided ninety-day notice to Magellan, the State of Nebraska, and the Administrator of the EPA.

Accordingly, Plaintiff has failed to state a claim under § 6972(a)(1)(B) because he did not provide the required notice under § 6972(b)(2).

### b. Anhydrous ammonia is not a solid or hazardous waste

"Congress passed [RCRA] to remedy national problems caused by hazardous waste and solid waste disposal." Blue Legs v. U.S. Bureau of Indian Affairs, 867 F.2d 1094, 1096 (8th Cir. 1989); see also 42 U.S.C. § 6901, et seq.; Meghrig v. KFC Western, Inc., 516 U.S. 479 (1996) (discussing RCRA). The primary purpose of RCRA "is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste . . . so as to minimize the present and future threat to human health and the environment." Meghrig, 516 U.S. at 483. RCRA provides private individuals a means, in some circumstances, by which to commence an action in a district court to enforce RCRA's waste disposal mandates. Specifically, § 6972(a)(1)(B) provides:

> any person may commence a civil action on his own behalf . . . against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment[.]

42 USC § 6972(a)(1)(B). Plaintiff alleges anhydrous ammonia and its constituents qualify as both solid waste and hazardous waste, and that it presents imminent and substantial danger. See Filing 1, Complaint ¶ 51 (citing 40 C.F.R. § 261.2; 42 U.S.C. § 6903(5)(B)).

RCRA defines solid and hazardous waste. See 42 U.S.C. § 6903. Under RCRA, "hazardous waste" is defined as:

> The term "hazardous waste" means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may--
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

10

42 U.S.C. § 6903(5).  "In order for waste to be classified as hazardous under RCRA, it must first qualify as a solid waste pursuant to the statute."  Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 205 (2d Cir. 2009) (citation omitted).  RCRA defines "solid waste" as follows:

> The term "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges which are point sources subject to permits under section 402 of the Federal Water Pollution Control Act, as amended (86 Stat. 880) [33 USCS § 1342], or source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954, as amended (68 Stat. 923) [42 USCS §§ 2011 et seq.].

42 U.S.C. § 6903(27).

Anhydrous ammonia is not "garbage, refuse, sludge[2] from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities."  Significantly, Plaintiff has not alleged anhydrous ammonia constitutes such waste.  As a result, because anhydrous ammonia is not solid waste, and Plaintiff has not alleged it constitutes a solid waste under 42 U.S.C. § 6903(27), anhydrous ammonia cannot be a hazardous waste.  See Cordiano, 575 F.3d at 205-06.  Without a substance that constitutes a solid or hazardous waste, Plaintiff cannot maintain a claim under RCRA and has thus failed to state a RCRA claim against Magellan.

Anhydrous ammonia is also not a solid waste under § 261.2(a).  The section defines "solid waste" as follows:

> (1) A solid waste is any discarded material that is not excluded under § 261.4(a) or that is not excluded by a variance granted under §§ 260.30 and 260.31 or that

---

[2] "The term 'sludge' means any solid, semisolid or liquid waste generated from a municipal, commercial, or industrial wastewater treatment plant, water supply treatment plant, or air pollution control facility or any other such waste having similar characteristics and effects."  42 U.S.C. § 6903(26A).

11

>>is not excluded by a non-waste determination under §§ 260.30 and 260.34.
>>(2)
>>>(i) A discarded material is any material which is:
>>>>(A) Abandoned, as explained in paragraph (b) of this section; or
>>>>(B) Recycled, as explained in paragraph (c) of this section; or
>>>>(C) Considered inherently waste-like, as explained in paragraph (d) of this section; or
>>>>(D) A military munition identified as a solid waste in § 266.202.

40 C.F.R. § 261.2(a)(1)-(2).

Anhydrous ammonia does not qualify as solid waste under 40 C.F.R. § 261.2 because it is not discarded material. The anhydrous ammonia was not abandoned under § 261.2(b). "Materials are solid waste if they are abandoned by being: (1) Disposed of; (2) Burned or incinerated; (3) Accumulated, stored, or treated (but not recycled) before or in lieu of being abandoned by being disposed of, burned or incinerated; or (4) Sham recycled[.]" 40 C.F.R. § 261.2(b). Anhydrous ammonia also was not being recycled as defined in 40 C.F.R. § 261.2(c) because it was not being disposed of, burned for energy, reclaimed, or accumulated and is not identified as a waste in Table 1 under § 261.2(c). Nor is anhydrous ammonia listed as "inherently waste-like" under § 261.2(d) or a military munition under 40 C.F.R. § 266.202. The anhydrous ammonia that travels through Magellan's pipeline is transported for purposes of distribution. Beyond citing the regulation, Plaintiff has not alleged any facts that anhydrous ammonia constitutes a discarded material under 40 C.F.R. § 261.2. Anhydrous ammonia does not qualify as solid waste under 40 C.F.R. § 261.2.

Plaintiff's conclusory allegation that anhydrous ammonia is a hazardous waste is supported by neither the statutes nor any well-pleaded factual allegations. In fact, the statutory provisions preclude anhydrous ammonia from being considered as a solid waste or hazardous waste. Under Twombly, Plaintiff's Complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Thus, Plaintiff has failed to state RCRA claim against Magellan.

### c. Plaintiff has not alleged imminent and substantial endangerment to health or the environment

Although anhydrous ammonia is not a solid or hazardous waste, assuming it could be considered a waste, Plaintiff must still demonstrate that it presents imminent and substantial endangerment to health or the environment. Plaintiff has failed to do so. Plaintiff merely recites the language of the statute without alleging any facts that anhydrous ammonia presents imminent and substantial endangerment to health or the environment. As a result, Plaintiff has failed to state a claim under RCRA, requiring dismissal.

The plain language of § 6972(a)(1)(B) requires more than a showing that the hazardous waste may present an endangerment to health or the environment. The endangerment must be both "imminent" and "substantial." The phrase "may present . . . quite clearly excludes waste that no longer presents" the harm contemplated by § 6972(a)(1)(B). Meghrig, 516 U.S. at 485-86. "As such, 'under an imminent hazard citizen suit, the endangerment must be ongoing, but the conduct that created the endangerment need not be." Burlington N. & Santa Fe Ry. v. Grant, 505 F.3d 1013, 1020 (10th Cir. 2007) (internal quotation marks and citation omitted). "The term 'endangerment' has been interpreted by courts to mean a threatened or potential harm[.]" Burlington N., 505 F.3d at 1020.

The term "imminent" is not defined by RCRA, however, the Supreme Court has held that "[a]n endangerment can only be 'imminent' if it threatens to occur immediately[.]" Meghrig, 516 U.S. at 485 (quotations omitted). Nonetheless, a finding of imminency does not require a showing that actual harm will occur immediately as long as the risk of threatened harm is present. Id. at 485-86 (holding that "there must be a threat which is present now, although the impact of the threat may not be felt until later") (quotations omitted).

The word "substantial" is similarly not defined in RCRA. However, "relevant case law has held that an endangerment is 'substantial' under RCRA when it is 'serious.'" Burlington N., 505 F.3d at 1021 (citation omitted). "This does not necessitate quantification of endangerment, as an endangerment is substantial where there is reasonable cause for concern that someone or something may be exposed to risk of

harm by release, or threatened release, of hazardous substances in the event remedial action is not taken." Id.

Here, Plaintiff's formulaic recitation of the elements of a RCRA claim, in conclusory legal terminology, does not satisfy Plaintiff's obligation to state a plausible claim for relief. See, e.g., Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Plaintiff has not alleged any facts that the anhydrous ammonia released in October 2016, presents imminent danger that presents the risk of harm to health or the environment. Additionally, Plaintiff has not alleged any facts that there is a serious, reasonable cause for concern, in the event remedial action is not taken, that anhydrous ammonia would be released from Magellan's pipeline. Plaintiff's conclusory, formulaic recitation of RCRA's statutory language fails to assert a RCRA claim against Magellan; therefore, Plaintiff's RCRA claim should be dismissed.

## 2. Plaintiff Has Failed to State a Claim for Strict Liability

Plaintiff's claim for strict liability should be dismissed because the doctrine of strict liability for ultrahazardous activities has not been adopted in Nebraska, and the transportation of anhydrous ammonia is not a ultrahazardous activity that would give rise to strict liability. In Anderson v. Nashua Corp., the Nebraska Supreme Court acknowledged "*the doctrine of strict liability for ultrahazardous activities has not been adopted in Nebraska*, but neither has it been repudiated." Anderson, 246 Neb. 420, 427, 519 N.W.2d 275, 281 (Neb. 1994) (emphasis added), disapproved on other grounds by Downey v. W. Cmty. Coll. Area, 282 Neb. 970, 972, 808 N.W.2d 839, 844 (2012). In In re Derailment Cases, 416 F.3d 787, 796 (8th Cir. 2005), the Eighth Circuit was presented with the question whether Nebraska recognized a cause of action for strict liability for ultrahazardous or abnormally dangerous activities. The district court determined Nebraska did not recognize such a claim, and granted the defendant's motion to dismiss the plaintiffs' strict liability claim, which the plaintiffs appealed. The Eighth Circuit looked to Nebraska law and found that Nebraska had not yet decided whether to adopt a cause of action of strict liability for ultrahazardous or abnormally dangerous activities. In re Derailment Cases, 416 F.3d at 795-96. The Eighth Circuit noted that the Supreme Court of Nebraska has "consistently declined to reach the

14

question of strict liability when an insufficient evidentiary basis exist[ed] for concluding that a particular activity is ultrahazardous." Id. Further, the Eighth Circuit opined:

> Plaintiffs' bare allegation that the transport of benzene by rail through populated areas is ultrahazardous in similarly bereft of evidentiary support. We predict that the Supreme Court of Nebraska would decline to reach the issue of strict liability based upon the evidence set forth in this case.

Id.

Similar to the court in In re Derailment Cases, this Court should decline the Plaintiff's invitation to create new law in Nebraska when neither the Nebraska Supreme Court nor Nebraska legislature have adopted strict liability for alleged ultrahazardous activities. See In re Derailment Cases; see also Mehl v. Canadian Pacific Ry., Ltd., 417 F.Supp.2d 1104, 1118 (D.N.D., 2006) (holding Plaintiffs' strict liability claims fail as a matter of law as South Dakota, which law is similar to Nebraska's law, "has given no indication that it would adopt strict liability for ultrahazardous or abnormally dangerous activities, nor has it indicated it would consider the transportation of anhydrous ammonia by rail to be an ultrahazardous activity"). As a matter of law, because Nebraska has not recognized strict liability for ultrahazardous activity, Plaintiff has failed to state a claim for relief and the Court should dismiss Plaintiff's strict liability claim.

Even assuming the Court were to entertain Plaintiff's claim, although Nebraska has not squarely addressed whether transporting anhydrous ammonia is an ultrahazardous activity or abnormally dangerous activity meriting application of strict liability, other courts have, and have concluded the storage or use of anhydrous ammonia does not constitute ultrahazardous activity or abnormally dangerous activity. For example, in Raymond Sprankle v. Bower Ammonia & Chem. Co., 824 F.2d 409 (5th Cir. 1987), the court concluded storage of anhydrous ammonia was not an abnormally dangerous activity. In Sprankle, the plaintiff developed respiratory problems allegedly due to anhydrous ammonia that leaked from storage tanks furnished and maintained at defendant's facility. Sprankle, 824 F.2d at 410-11. Among the claims asserted was one for strict liability for an abnormally dangerous activity. Id. The district court refused to allow this claim to go to the jury, ruling in the defendant's favor as a matter of law. Id.

On appeal, the court considered whether storage of anhydrous ammonia was an abnormally dangerous activity to which strict tort liability attaches as a matter of law. Id. at 414-16. After considering the factors set forth is sections 519 and 520 of The Restatement (Second) of Torts, the court predicted that Mississippi courts would not conclude storage of anhydrous ammonia constitutes an ultrahazardous activity for purposes of imposing strict liability. Id. While recognizing contact with ammonia, particularly in its liquid state, can be extremely dangerous, and inhalation of large concentrations of anhydrous ammonia is poisonous, the court concluded "the likelihood that storage of anhydrous ammonia would result in great harm is small." Id. at 415-16. The court noted "exposure to toxic concentrations can be avoided by moving away from the close proximity of the source of the gas once its odor is detected, so that the risk of serious injury from anhydrous ammonia can be largely eliminated by 'the exercise of reasonable care.'" Id. at 415 (quoting Restat. 2d of Torts, § 520(c)). Further, the court recognized that "since anhydrous ammonia is commonly used in a wide variety of agricultural, industrial, and commercial applications, its storage, even in large quantities, can hardly be said to be 'not a matter of common usage.'" Id. (quoting § 520(d)). Lastly, the court noted the storage was at a commercial plant and not in an inappropriate location. Id. (citing § 520(e)).

Notably, the focus is on the activity, the operation of a pipeline, not on the substance transported. As this Court has recognized, "ultrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities." Marmo v. IBP, Inc., 362 F. Supp. 2d 1129, 1134 (D. Neb. 2005) (quoting Indiana Harbor Belt R.R. Co. v. American Cyanamid Co., 916 F.2d 1174, 1181 (7th Cir. 1990)). "[I]f the rule were otherwise, virtually any commercial or industrial activity involving substances which are dangerous only in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." Marmo, 362 F. Supp. 2d at 1134 (quoting City of Bloomington, Ind. v. Westinghouse Elec. Corp., 891 F.2d 611, 615-17 (7th Cir. 1989) (citation omitted)). Here, the operation of a pipeline, and the transportation of anhydrous ammonia, is not an ultrahazardous activity. See, e.g., Mehl, 417 F.Supp.2d at 1118 (D.N.D., 2006) (recognizing the transportation of anhydrous ammonia has not been considered an ultrahazardous

16

activity). To conclude otherwise would lead to "intolerable" results making the transportation of any substance ultrahazardous or abnormally dangerous. Similar to Sprankle, which held the storage of anhydrous ammonia was not an ultrahazardous activity, and Mehl, which recognized transportation of anhydrous ammonia by rail was not an ultrahazardous activity, this Court should conclude the related transportation of anhydrous ammonia is not an ultrahazardous activity. Plaintiff's conclusory allegation to the contrary does not change this decision. Plaintiff's strict liability claim fails to state a claim of relief that is plausible on its face, and therefore, it should be dismissed.

### 3. Plaintiff Has Failed to State a Claim for Trespass

Plaintiff has failed to state a claim for trespass because Plaintiff has not alleged any facts demonstrating Magellan intentionally released anhydrous ammonia from the pipeline. In Nebraska, "[l]iability for trespass exists if an actor intentionally enters land in the possession of another, or causes a thing or third person to do so." Obermiller v. Baasch, 284 Neb. 542, 557, 823 N.W.2d 162, 173 (2012). Plaintiff's conclusory trespass claim does not contain sufficient factual matter to state a claim to relief that is plausible on its face. Plaintiff has not alleged any facts supporting even the slightest inference that the release of anhydrous ammonia was caused by Magellan's intentional conduct. Without such factual allegations, Plaintiff's trespass claim fails. Accordingly, the Court should dismiss Plaintiff's trespass claim.

### CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Plaintiff's Complaint.

DATED this 4th day of May, 2018.

        Magellan Ammonia Pipeline, L.P. and
        Magellan Midstream Partners, L.P.,
        Defendants.

BY: *s/ Michael F. Coyle*
      Michael F. Coyle, #18299
      Brandon J. Crainer, #24891
      FRASER STRYKER PC LLO
      500 Energy Plaza
      409 South 17th Street

Omaha, NE 68102-2663
(402) 341-6000
mcoyle@fraserstryker.com
bcrainer@fraserstryker.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was filed electronically with the United States District Court for the District of Nebraska on May 4, 2018, using the CM/ECF system which sent notification of such filing to counsel of record.

                                        *s/ Michael F. Coyle*

1871651 v5