IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEVEN CHACE,<br><br>    Plaintiff,<br><br>vs.<br><br>MAGELLAN AMMONIA PIPELINE, L.P., MAGELLAN MIDSTREAM PARTNERS, L.P., and MAGELLAN DOE COMPANY,<br><br>    Defendants. | 8:18CV113<br><br>**MEMORANDUM AND ORDER** |

Steven Chace (hereinafter Chace) is suing Magellan Ammonia Pipeline, L.P. and Magellan Midstream Partners, L.P. (collectively "Magellan") under six theories of recovery. Four are state law claims: strict liability, negligence, nuisance, and trespass. One is a federal law claim: Resource Conservation & Recovery Act (RCRA) (42 U.S.C. § 6972(a)(1)(B)). One invokes both state and federal law: Inverse Condemnation (U.S. CONST. amend. V; NEB. CONST. art. I, § 21). Chace alleges that Magellan operated its anhydrous ammonia pipeline unlawfully and seeks relief for damages resulting from the release of ammonia onto Chace's property. Defendants have moved to dismiss this case under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1). Filing No. 12.

I. BACKGROUND

The plaintiff, Steven Chace, lives and owns property in Burt County, Nebraska. Chace is an environmental scientist and an avid outdoorsman. Filing No. 1, ¶ 12. The defendants, Magellan Midstream Partners, L.P. and its wholly-owned, indirect subsidiary, Magellan Ammonia Pipeline, L.P., are Delaware limited partnerships. Filing No. 13-1,

¶ 4.  Magellan operates a pipeline by easement across Chace's land.  Filing No. 1, ¶ 10. The pipeline carries anhydrous ammonia.  *Id.*

In late 2012, Chace began to suspect that the ammonia pipeline was leaking.  *Id.* at ¶ 13.  He noticed dead plants above the pipeline and smelled ammonia around the pipeline.  *Id.*  He reported the leak to Magellan in May 2013, and a Magellan repair team unearthed the pipeline and put a collar on the pipeline to plug the leak.  *Id.* at ¶ 14.

During the night of October 17, 2016, Chace woke up choking.  *Id.* at ¶ 14, ¶ 21. He smelled ammonia in his house, and when he looked out of his windows, he saw a cloud of anhydrous ammonia enveloping his home.  *Id.* at ¶ 21.  The pipeline had ruptured and was releasing more than 80,000 gallons of ammonia into the air.  *Id.* at ¶ 19.

Chace knew the ammonia could kill him.  *Id.* at ¶ 22.  Still, he stayed in the ammonia cloud long enough to dial 911, to warn his neighbors of the danger, and to arrange to block the road, protecting those who might stumble into the danger unaware. After doing all he could do, Chace fled his home on foot, running for his life.  *Id.* at ¶ 2, ¶ 22.

Chace escaped, but not all of his neighbors made it out alive.  Chace watched as one of his neighbors—too far away to be helped—died in the ammonia cloud.  Filing No. 1, ¶ 2.

Chace filed the Complaint on March 3, 2018, seeking relief from Magellan for the damages he attributes to the ammonia release.  These damages include the impairment of Chace's eyes, lungs, and kidneys; unremitting pain in his extremities; and the loss of higher intellectual functions and earning potential.  Filing No. 1, ¶ 25.

Magellan filed a motion to dismiss. Filing No. 12. Magellan asserts that this Court lacks subject-matter jurisdiction over this case (Fed. R. Civ. P. 12(b)(1)) and that Chace has failed to state a claim for which relief can be granted (Fed. R. Civ. P. 12(b)(6)). Chace and Magellan have briefed the motion to dismiss.

II. STANDARD OF REVIEW

A.   Fed. R. Civ. P. 12(b)(6)

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under, Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Determining whether a complaint states a plausible claim for relief is "a context specific task" that requires the court "to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal

conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Courts follow a "two-pronged approach" to evaluate Rule 12(b)(6) challenges. *Id.* First, a court divides the allegations between factual and legal allegations; factual allegations should be accepted as true, but legal allegations should be disregarded. *Id.* Second, the factual allegations must be parsed for facial plausibility. *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.). The court must find enough factual matter (taken as true) to suggest that discovery will reveal evidence of the elements of the claim. *Twombly*, 550 U.S. at 558, 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679.

B.  Fed. R. Civ. P. 12(b)(1)

Jurisdiction is a threshold issue for this Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). The party seeking to invoke federal jurisdiction carries the burden of proof on that issue. *See DaimlerChrystler Corp. v. Cuno,* 547 U.S. 332, 342 (2006); *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112

4

(8th Cir. 2000). A complaint can be challenged under Fed. R. Civ. P. 12(b)(1) either "on its face or on the factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." Id. In a factual attack on the jurisdictional allegations of the complaint, however, the court can consider competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. Id. In reviewing a pleading, the court may generally consider documents attached to it. Brown v. Green Tree Servicing LLC, 820 F.3d 371, 372 n.1. (8th Cir. 2016)(regarding mortgage and notice); Great Plains Trust Co. v. Union Pac. R.R., 492 F.3d 986, 990 (8th Cir. 2007) (stating the court may consider documents attached to the complaint and matters of public and administrative record referenced in the complaint); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

III. DISCUSSION

A. Failure to State a Claim

Magellan argues that this Court should dismiss Chace's RCRA claim for failure to state a claim. The Court agrees for the reason that Chace has not provided the notice that RCRA requires.

Chace sues under 42 U.S.C. § 6972(a)(1)(B). Filing No. 1, ¶¶ 48–53. Before a plaintiff can sue under 42 U.S.C. § 6972(a)(1)(B), he must notify the EPA's Administrator. 42 U.S.C. § 6972(b)(2)(A). Chace does not allege that he notified the Administrator. If a

5

plaintiff sues under the citizen suit provisions of RCRA but fails to notify the Administrator, "the district court must dismiss the action as barred by the terms of the statute." *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 33 (1989). Dismissal accords with RCRA's "plain language" and structure. *Id.* at 25–26, 28–30.

Under RCRA's plain language, the notice requirement is "mandatory, not optional." *Id.* at 26. "No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to" the Administrator, the State, and the alleged contributor. 42 U.S.C. § 6972(b)(2)(A). The notice requirement is in subsection (b), and the statute labels subsection (b), "Actions prohibited." 42 U.S.C. § 6972(b). RCRA thus prohibits Chace from filing a complaint without notifying the Administrator. *See Hallstrom*, 493 U.S. at 26.

RCRA's structure also militates for dismissing RCRA citizen suits when the plaintiff fails to meet the notice requirements. RCRA prevents a plaintiff from commencing an action if either the Administrator or the State addresses the endangerment. 42 U.S.C. § 6972(b)(2)(B)–(C). This creates a system where the plaintiff notifies the Administrator and the State so that the EPA and the State can decide whether to address the endangerment themselves or to allow the citizen to proceed. This structure "strike[s] a balance between encouraging citizen enforcement of environmental regulations and avoiding burdening the federal courts with excessive numbers of citizen suits." *Hallstrom*, 493 U.S. at 29. Allowing Chace to proceed with his RCRA claim when he has not notified the Administrator would upset that balance

6

In sum, *Hallstrom* requires the Court to dismiss Chace's RCRA claim because Chace failed to provide the notice required by RCRA. The Court dismisses Chace's RCRA claim with leave to refile after Chace meets RCRA's notice requirements.[1]

B.   Subject Matter Jurisdiction

Magellan also argues that dismissing Chace's RCRA claim divests this Court of subject-matter jurisdiction. The Court agrees.

1.   Federal Question Jurisdiction

If a "plaintiff's properly pleaded complaint" does not present a federal question, there is no federal-question jurisdiction. *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016). Chace's RCRA claim does not present a federal question because the Court has dismissed it for failing to state a claim. If Chace's RCRA claim is his only federal claim, then his complaint does not present a federal question, and this Court lacks federal-question jurisdiction.

The only possible federal claim is Chace's inverse condemnation claim. Filing No. 1, ¶¶ 37–38. However, Magellan characterizes this claim as a state-law claim and asserts that Chace's RCRA claim is Chace's only federal claim. Filing No. 14 at 8. Chace did not

---

[1] If Chace refiles—in state court or in this Court—he should provide further analysis on Magellan's other two arguments: that anhydrous ammonia is not a solid waste and that the release does not present an imminent environmental danger. At least one court has held that a useful material can become a solid waste after spilling or leaking. *See* Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc., 877 F. Supp. 476, 481–82 (D. Minn. 1995). Anhydrous ammonia, however, volatizes when depressurized. This may exclude it from the definition of "solid waste," which refers to liquids and contained gases but not to uncontained gases. *See* Helter v. AK Steel Corp., No. C-1-96-527, 1997 WL 34703718, at *11–12 (S.D. Ohio Mar. 31, 1997). Chace will also need to show how the ammonia continues to present a substantial danger.

7

challenge this assertion in his brief opposing Magellan's motion to dismiss. The Court will therefore treat Chace's inverse condemnation claim as a state-law claim.

Treating Chace's inverse condemnation claim as a state-law claim makes sense because Chace seeks compensation for damage to his property. Filing No. 1, ¶¶ 37–38. Chace may have a claim under the Nebraska Constitution, which—unlike the federal Constitution—applies when property is "taken or damaged." NEB. CONST. art. I, § 21. Meanwhile, Chace's inverse condemnation claim does not allege facts sufficient to raise a federal question. Chace has not alleged or explained what federal takings theory supports a claim when an actor takes some property and damages other property. Chace has also failed to identify the government that authorized Magellan to exercise eminent domain; if a State authorized Magellan, Chace must also exhaust state-law remedies before he can sue in federal court. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194–95 (1985).

Although Chace cites federal law to support two of his claims, neither of those claims raises a federal question. All other claims set forth in the complaint allege state court actions. Therefore, the Court lacks federal-question jurisdiction.

2. Diversity Jurisdiction

The plaintiff lives in Nebraska. Filing No. 1, ¶ 4. The defendants are two Delaware limited partnerships. Filing No. 1, ¶ 7.1–7.2. One of the limited partnerships, Magellan Midstream, is a master limited partnership—its limited partners are called "unitholders" and are publicly traded. Filing No. 14 at 1, 6. Magellan Midstream has more than 1000

unitholders who live in Nebraska. *Id.* The other limited partnership is a subsidiary of the first. Filing No. 13-1, ¶ 4.[2]

Chace argues that this Court has diversity jurisdiction because the partnerships were formed in Delaware and have principal places of business in Oklahoma. Magellan argues that this Court lacks diversity jurisdiction because Magellan Midstream has unitholders who live in Nebraska. The Court agrees with Magellan. For diversity purposes, a master limited partnership is a citizen of Nebraska when it has unitholders who are citizens of Nebraska.

The Supreme Court's holding in *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), compels the conclusion that a master limited partnership is a citizen of the states where its unitholders live. *Carden* is clear, and the Supreme Court has reaffirmed *Carden*'s rule.

The Court in *Carden* considered whether an Arizona limited partnership was a citizen of Louisiana for diversity purposes when it had a limited partner who was a citizen of Louisiana. *Carden* held that the limited partnership was a citizen of Louisiana. Under *Carden*, an artificial entity's citizenship is determined by the citizenship of all its members—unless the entity is a corporation. *Id.* at 187–89, 195–96. This exception for

---

[2] The parties appear to assume that the citizenships of the two Magellan entities rise and fall together. Because neither party has briefed the issue, the Court will not disturb that assumption. *Helter v. AK Steel Corp.*, No. C—1—96—527, 1997 WL 34703718, at *11 (D. S.D. Ohio, West. Div., 1997); *The Craig Lyle Ltd. P'ship v. Land O'Lakes, Inc.*, 877 F.Supp. 476, 481 (D. Minn. 4th Div. 1995).

9

corporations "must not be extended." *Id.* at 189 (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456 (1900)).

Thus, a limited partnership is a citizen of the states where its partners—even limited partners—reside. Because the Magellan entities are organized as limited partnerships and have partners who are citizens of Nebraska, they are citizens of Nebraska. Because the plaintiff and the defendants are all citizens of Nebraska, this Court lacks diversity jurisdiction.

Chace concedes that *Carden* is "generally viewed as the governing rule" (Filing No. 19, ¶ 10) but argues that it should not govern this case.

Chace first argues that *Carden* predates the rise of entities like limited liability corporations and limited partnerships. Filing No. 19, ¶ 5. True, but the Supreme Court recently reaffirmed *Carden*'s rule. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016–17 (2016) ("When we last examined the 'doctrinal wall' between corporate and unincorporated entities in 1990, we saw no reason to tear it down. Then as now we reaffirm that it is up to Congress if it wishes to incorporate other entities into 28 U.S.C. § 1332(c)'s special jurisdictional rule.") (citation omitted). The Supreme Court could have changed course in light of the rise of limited liability entities, but it did not.

Chace next argues that *Carden* does not control this case because Delaware master limited partnerships today are more like corporations than were Arizona limited partnerships in 1990. Filing No. 19, ¶ 8. Like a corporation's shareholders, a master limited partnership's limited partners are not liable for the partnership's liabilities, cannot sue for the limited partnership, and do not manage or control the partnership. *Id.*

10

These similarities, however, cannot breach the "doctrinal wall" separating corporations from all other artificial entities. See *Carden*, 494 U.S. at 189; *see also Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (holding that "the citizenship of an MLP consists of its unitholders' citizenship"). The *Carden* court considered and rejected Chace's proposed approach, which would compare the "internal organization, state law requirements, management structure, and the capacity or lack thereof to act and/or sue." *Carden*, 494 U.S. at 190 (citing *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 151 (1965)). The Supreme Court has chosen form over function. No matter how much an unincorporated entity may resemble a corporation, it will not be treated like a corporation.

Chace also notes that *Carden* did not define "member" of an artificial entity, inviting this Court to find that Magellan's unitholders are not members of Magellan. Filing No. 19, ¶ 10. The Court declines that invitation. While the Supreme Court has never "expressly defined" "member," it has given enough guidance to make clear that Magellan's unitholders are members of Magellan. *Americold*, 136 S. Ct. at 1015. An entity's members are the people who own or compose the entity. *Id.* Magellan's unitholders own and compose the entity. Moreover, the need for a special rule dislocating a corporation's citizenship from its members' citizenships strongly suggests that a corporation's shareholders are members of that corporation. It is inconceivable that limited partners and shareholders could be members while unitholders are not, for unitholders are limited partners who have some qualities of shareholders.

11

Chace further argues that *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), and its real-party-in-interest test should control this case instead of *Carden*. Filing No. 19, ¶ 11. *Carden* forecloses this approach. The *Carden* majority criticized the dissent for applying a "real party to the controversy" test. See *Carden*, 494 U.S. at 187 n.1. Courts use that test to determine which parties the court should consider for diversity purposes. *Id.* Courts do not use—and have never used—the real-party-in-interest test to determine the citizenship of a party for diversity purposes. See *id.*

For example, assume Chace sues two named defendants: Magellan Midstream and Magellan Ammonia Pipeline. Suppose that one of the entities, say Magellan Ammonia Pipeline, were a citizen of Nebraska and that the other, Magellan Midstream, were not a citizen of Nebraska. In that case, Chace could try to argue that Magellan Ammonia Pipeline is not a real-party-in-interest and that the Court should accordingly exclude it for diversity purposes. Because Magellan Ammonia Pipeline would be the only non-diverse defendant, excluding Magellan Ammonia Pipeline would create diversity.

In the actual case, however, Chace urges this Court to use the real-party-in-interest test not to nullify for diversity purposes the *already-determined* citizenship of one of the Magellan entities but to *determine* Magellan's citizenship. Under *Carden*, it would be improper for the Court to use the real-party-in-interest test in such a manner.

Finally, Chace suggests that an entity should take on the citizenship of its members only when the entity is suing—as opposed to being sued—in federal court. Filing No. 19, ¶ 14. One part of 28 U.S.C. § 1332 does apply a different rule when an entity is *being sued*: § 1332(c)(1) provides a different way of determining citizenship in an "action *against*

the insurer of a policy" (emphasis added). But that is an exception to § 1332(c)(1)'s general rule, and § 1332(a) refers to actions *"between* citizens of different States" (emphasis added) and provides no special rules for suits *against* particular parties.

It is up to Congress—not the federal courts—to calibrate diversity jurisdiction to address policy concerns. See *Americold*, 136 S. Ct. at 1017; *Carden*, 494 U.S. at 197. The language in § 1332(c)(1)'s insurer exception shows that Congress knew how to treat defendants differently from plaintiffs. The language in § 1332(a) shows that Congress did not want to treat defendants differently from plaintiffs in that subsection.

Chace cites no case law supporting the proposition that *Carden*'s rule does not apply when the entity is the defendant. Language in *Carden* also suggests that the test for citizenship is the same for plaintiffs and defendants: "We have never held that an artificial entity, *suing or being sued* in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Carden*, 494 U.S. at 192 (emphasis added). Thus, neither the statute nor the case law supports using a different test for citizenship when an artificial entity is the defendant.

Master limited partnerships take on the citizenships of their unitholders. Magellan is a master limited partner with 1,300 unitholders who live in Nebraska. Therefore, Magellan is a citizen of Nebraska.

Since the plaintiff and the defendants are all citizens of Nebraska, this is not an action between citizens of different states, so this Court cannot exercise diversity jurisdiction over the Chace's state law claims.

Chace's RCRA claim fails to state a claim upon which relief can be granted, and Chace has no remaining federal claims. The Court will not exercise supplemental jurisdiction over Chace's state law claims.

THEREFORE, IT IS ORDERED THAT: Defendants' motion to dismiss, Filing No. 12, is granted.

Dated this 2nd day of January 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge